## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CYNTHIA L. BENNETT,           )
                         )

         **Plaintiff,**     )      **No:**
                         )

vs.                   )      **Jury Demand**
                         )      FILED: JUNE 23, 2008

**JOHN E. POTTER, POSTMASTER GENERAL OF**  )      08 CV 3587
**THE UNITED STATES POSTAL SERVICE,**    )      JUDGE ZAGEL
                         )      MAGISTRATE JUDGE ASHMAN

         **Defendant.**    )

                                         JH

## COMPLAINT
### AS AND FOR A FIRST COUNT OF ACTION
### (Title VII-COLOR DISCRIMINATION)

### Nature of the Action

1.    This is an action under Title VII of the Civil Rights Act of 1964 and as amended by

inter alia, the Civil Rights Act of 1991 ("ACT"), for the Defendant, JOHN E. POTTER,

POSTMASTER GENERAL OF THE UNITED STATES POSTAL SERVICE, ("USPS")

having subjected Plaintiff, CYNTHIA L. BENNETT, hereinafter ("BENNETT") to long-

term color discrimination (disparate treatment) and hostile work environment based upon

color, despite BENNETT' repeated complaints about same.

### JURISDICTION AND VENUE

2.  Jurisdiction of this Court is invoked 28 U.S.C. Section 1331, 1337, 1343 and 1345,

1391 (e). This action is authorized and instituted pursuant to Title VII of the Civil Rights

1964 ("ACT"), 42 U.S.C.A. §§ 2000 (e) et seq.

3.  The employment practice hereinafter alleged to be unlawful where and is now being

committed in the Northern District of Illinois Eastern Division.

4. BENNETT is a White-American female who is a resident of Elmwood Park, Cook County, Illinois.

5. BENNETT is an employee of Defendant, USPS.

6. At all times relevant, USPS, has been and is a Federal Agency of the Government and JOHN POTTER, is the Director of the USPS.

7. USPS is an employer within the meaning of the ACT and has been at all times material to the allegations herein.

8. This action brought against the Defendant, USPS having subjected Plaintiff, BENNETT to color discrimination by failure to treat her the same as other non-white employees despite BENNETT'S repeated complaints about same.

9. Defendant by its action or actions of its agents, caused and created a hostile work environment which unreasonably interfered with the terms and conditions of Plaintiffs employment and Plaintiff performance in her job by failing to promote her to a higher position, failed to provide her access to proper tools for her position, failed to properly train her on certain machinery, failed to allow her to attend training on tray/line robots and accused her of wrongful acts for which she denied committing. Further, by said acts, Defendant's agents created a discriminatory, hostile and offensive work environment. All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-c et seq; as amended by inter alia the Civil Rights Act of 1991.

10. By reason of the color discrimination and disparate treatment by Defendant, Plaintiff has suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to her damage.

11. Further, said action on the part of the Defendant was done with malice and

2

reckless disregard for Plaintiffs' protected rights.

12. Plaintiff filed a discrimination charge against Defendant with the Equal Employment Opportunity (EEO). That charge was timely filed, under the ACT.

13. On March 31 2008, Plaintiff received notice from the EEO of her right to bring this action (see Exhibit "A"), and Plaintiff timely filed this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (TITLE VII COLOR HARASSMENT)

14.  BENNETT repeats and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

15. Defendant by its action or actions of its agents, caused and created a hostile work environment which unreasonably interfered with the terms and conditions of Plaintiffs employment and Plaintiff performance in her job by failing to promote her to a higher position, failed to provide her access to proper tools for her position, failed to properly train her on certain machinery, failed to allow her to attend training on tray/line robots and accused her of wrongful acts for which she denied committing. Further, by said acts, Defendant's agents created a discriminatory, hostile and offensive work environment. All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-c et seq; as amended by inter alia the Civil Rights Act of 1991.

16. By reason of the color harassment and disparate treatment by Defendant, Plaintiff has suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to her damage.

17. Further, said action on the part of the Defendant was done with malice and reckless disregard for Plaintiffs' protected rights.

3

## AS AND FOR A THIRD CAUSE OF ACTION
## (TITLE VII COLOR DISCRIMINATION-DISPARATE TREATMENT)

18.  BENNETT repeats and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

19. Defendant by its action or actions of its agents, caused and created a hostile work environment which unreasonably interfered with the terms and conditions of Plaintiffs employment and Plaintiff performance in her job by failing to promote her to a higher position, failed to provide her access to proper tools for her position, failed to properly train her on certain machinery, failed to allow her to attend training on tray/line robots and accused her of wrongful acts for which she denied committing. Further, by said acts, by treating her differently than other non-white employees, Defendant's agents created a discriminatory, hostile and offensive work environment. All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-c et seq; as amended by inter alia the Civil Rights Act of 1991.

20. By reason of the color harassment and disparate treatment by Defendant, Plaintiff has suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to her damage.

21. Further, said action on the part of the Defendant was done with malice and reckless disregard for Plaintiffs' protected rights.

## AS AND FOR A FOURTH CAUSE OF ACTION
## (TITLE VII SEXUAL DISCRIMINATION)

22.  BENNETT repeats and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

4

23. This is an action under Title VII of the Civil Rights Act of 1964 and as amended by

inter alia, the Civil Rights Act of 1991, 42 U.S.C. 2000(e) et seg., for the Defendant,

USPS having subjected BENNETT to sex discrimination by failure to treat her the same

as other non-female employees despite BENNETT'S repeated complaints about same.

24. Jurisdiction of this court is provided by 28 U.S.C. 1331 and 1343.

25. Beginning in December of 2006 through May of 2007, her immediate supervisor,

Surjit Grewal, wrongfully and knowingly treated Plaintiff differently than other  male

employees, whose performance was the same as or, less than that of Plaintiff.

26. USPS intentionally subjected Plaintiff to unequal and discriminatory treatment by

discriminating and harassing Plaintiff based on her sex.

27. By engaging in discriminatory conduct, USPS discriminated against Plaintiff in

violation of 42 U.S.C. 2000(e) as amended.

28. The discriminatory action of Plaintiff as set forth above has caused Plaintiff to suffer

losses of earnings, and as a further proximate result of USPS's unlawful and intentional

discriminatory actions against Plaintiff, as alleged above, Plaintiff has been harmed in

that Plaintiff has suffered in her position, her work environment has become impaired and

her work performance has been impaired. As a further proximate result of USPS's

unlawful and intentional discriminatory actions against Plaintiff, as alleged above,

Plaintiff has been harmed in that Plaintiff has suffered emotional pain, humiliation,

mental anguish, loss of enjoyment of life, and emotional distress. All in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-3 et seq; as amended by inter

alia the Civil Rights Act of 1991. As a result of such discrimination and consequent

harm, Plaintiff has suffered such damages in an amount according to proof.

29. Further, said action on the part of the USPS was done with malice and reckless disregard for Plaintiff's protected rights.

## AS AND FOR A FIFTH CAUSE OF ACTION
## (TITLE VII SEXUAL HARASSMENT)

30. BENNETT repeats and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

31. Defendant by its action or actions of its agents, caused and created a hostile work environment which unreasonably interfered with the terms and conditions of Plaintiffs employment and Plaintiff performance in her job by failing to promote her to a higher position, failed to provide her access to proper tools for her position, failed to properly train her on certain machinery, failed to allow her to attend training on tray/line robots and accused her of wrongful acts for which she denied committing. Further, by said acts, Defendant's agents created a sexual harrassment, hostile and offensive work environment. All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-c et seq; as amended by inter alia the Civil Rights Act of 1991.

32. By reason of the sexual harassment and disparate treatment by Defendant, Plaintiff has suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to her damage.

33. Further, said action on the part of the Defendant was done with malice and reckless disregard for Plaintiffs' protected rights.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (TITLE VII SEX DISCRIMINATION-DISPARATE TREATMENT)

34. BENNETT repeats and realleges each and every allegation set forth above with the

same force and effect as if more fully set forth herein.

35. Defendant by its action or actions of its agents, caused and created a hostile work environment which unreasonably interfered with the terms and conditions of Plaintiffs employment and Plaintiff performance in her job by failing to promote her to a higher position, failed to provide her access to proper tools for her position, failed to properly train her on certain machinery, failed to allow her to attend training on tray/line robots and accused her of wrongful acts for which she denied committing. Further, by said acts, by treating her differently than other non-white employees, Defendant's agents created a discriminatory, hostile and offensive work environment. All in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-c et seq; as amended by inter alia the Civil Rights Act of 1991.

36. By reason of the color harassment and disparate treatment by Defendant, Plaintiff has suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to her damage.

37. Further, said action on the part of the Defendant was done with malice and reckless disregard for Plaintiffs' protected rights.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (TITLE VII –HOSTILE ENVIRONMENT)

38. BENNETT repeats and realleges each and every allegation set forth above with the same force and effect as more fully set forth herein.

39. Employees of USPS have openly made disparaging remarks against her and to other employees of USPS. Further, her immediate supervisor and other co-workers have undermined the authority of BENNETT with other employees.

40. Further, job efficiency of BENNETT became impaired by the wrongful conduct of

agents of USPS making it very difficult to work at USPS.

41. BENNETT, as a result of this situation, her health has been affected.

42. By reason of the hostile environment of USPS, BENNETT has suffered great pain, humiliation and mental anguish, all to her damage.

43. Further, said action on the part of the USPS was done with malice and reckless disregard for Plaintiffs' protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights;

2. For injunctive relief, including but not limited to relief required to make Plaintiff whole for the losses caused by the violations of Defendant;

3. For compensatory damages in an amount according to proof;

4. For costs of suit, including reasonable attorney's fees and expert fees, pursuant to 42 U.S.C.A § 12117(a), which incorporates the remedies set forth in Title VII of the Civil Rights Act of 1964, Title 42 U.S.C.A. § 2000e-5(k); and

5. For such other and further relief as the court deems proper.

CYNTHIA L. BENNETT

BY:/s/ Michael T. Smith
Michael T. Smith
Trial Attorney

Michael T. Smith 6180407IL
440 W. Irving Park Road
Roselle, IL 60172
(847) 895-0626

UNITED STATES POSTAL SERVICE
EQUAL EMPLOYMENT OPPORTUNITY CASE
IN THE MATTER OF:

Cynthia L. Bennett
Complainant

                      Agency Case No.    1J-620-0008-07
                      EEOC Case No.    440-2008-00055X

v.

                      Formal Filed:    June 30, 2007

John E. Potter,
Postmaster General,
c/o Great Lakes Area Operations
Respondent.

## FINAL AGENCY DECISION

This is the final agency decision of the U.S. Postal Service regarding your complaint of discrimination identified above. In that complaint, you alleged discrimination based on your color (White) and sex (Female) in that ongoing since January 4, 2007, you have been subjected to hostile work environment harassment, including but not limited to: not provided assistance in the performance of your duties; subjected to improper behavior from male co-workers; subjected to disparaging remarks and comments; your request for a Preferred Duty Assignment on Tour 2 has not been granted; on March 22, 2007, your request for tools and a toolbox was again denied; and in June 2007, your supervisor accused you of stealing tools.

## CASE CHRONOLOGY

An Equal Employment Opportunity Investigator processed your complaint, and a copy of the Investigative Report was transmitted to you on October 31, 2007. Following receipt of that report, you had 30 days in which to request a hearing before an Administrative Judge (AJ) of the Equal Employment Opportunity Commission (EEOC) or a final agency decision without a hearing.

Although you initially requested a hearing, on February 12, 2008, Administrative Judge Winston J. Jackson Jr. dismissed your complaint and ordered the Postal Service to issue a final agency decision. Thus, this decision is being issued in compliance with the order of the Administrative Judge.

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 2

# APPLICABLE LAW

## Disparate Treatment

The United States Supreme Court established a burden-shifting framework for analyzing claims of discrimination in <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792 (1973), and subsequently refined that analysis in <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981). The <u>McDonnell Douglas</u> and <u>Burdine</u> approach involves a three-step process when a complainant alleges intentional discrimination based on a disparate treatment theory. The Equal Employment Opportunity Commission has adopted this approach in its decision making. <u>Downing v. U.S. Postal Service</u>, EEOC Appeal No. 01822326 (September 19, 1983); <u>Jennings v. U.S. Postal Service</u>, EEOC Appeal No. 01932793 (April 13, 1994); and <u>Saenz v. Department of the Navy</u>, EEOC Request No. 05950927 (January 9, 1998). A complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, the complainant must establish a *prima facie* case of discrimination for each of the bases of discrimination alleged by a preponderance of the evidence. <u>Furnco</u>, 438 U.S. at 576.

Although a complainant may establish a *prima facie* case by presenting direct evidence of discrimination, the more frequent method of establishing a *prima facie* case is through circumstantial evidence by showing that he or she (1) belongs to a protected class; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group. <u>Mayberry v. Vought Aircraft Company</u>, 55 F.3d 1086, at 1090 (5th Cir. 1995); <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, at 582-83 (6th Cir. 1992). The failure to establish a specific element of a *prima facie* case may be overcome by presenting evidence of agency actions from which an inference of discrimination could be drawn if they remained unexplained. <u>Day v. Postmaster General</u>, EEOC Appeal No. 01996097 (September 18, 2000).

Once a *prima facie* case has been established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. <u>Furnco</u>, 438 U.S. at 578. See also <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, at 506 (1993). The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. <u>Burdine</u>, 450 U.S. at 254; <u>Keval v. Commodity Futures Trading Commission</u>, EEOC Appeal No. 01832127 (November 2, 1984); <u>Hollis v. Department of Veterans' Affairs</u>, EEOC Appeal No. 01934600 (May 3, 1994). If the agency offers no adequate explanation for the discrepancy in treatment between the complainant and similarly situated employees, the agency does not carry its burden of production

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 3

and the complainant prevails on the basis of the inference of discrimination created by the *prima facie* case. Frady v. Postmaster General, EEOC Appeal No. 01A05317 (January 10, 2003); Houston v. Department of Veterans' Affairs, EEOC Appeal No. 01976054 (August 27, 1999); and Parker v. Postmaster General, EEOC Request No. 05900110 (April 30, 1990).

If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case." Hicks, *supra*, 509 U.S. at 507; United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, at 715 (1983). See also Hernandez v. Department of Transportation, EEOC Request No. 05900159 (June 28, 1990) and Peterson v. Department of Health and Human Services, EEOC Request No. 05900467 (June 8, 1990). The complainant can then prevail only if he or she proves that the employer's reasons are not only pretext but are pretext for discrimination. Hicks, 509 U.S. at 507 and 516; Nichols v. Grocer, 138 F.3d 563, at 566 (5th Cir. 1998); Swanson v. General Services Administration, 110 F.3d 1180, at 1185 (5th Cir. 1997). See also Papas v. Postmaster General, EEOC Appeal No. 01923753 (March 17, 1994) and Bradford v. Department of Defense, EEOC Appeal No. 01940712 (September 20, 1994). Thus, the complainant cannot create a factual issue of pretext based merely on personal speculation that there was discriminatory intent. Southard v. Texas Board of Criminal Justice, 114 F.3d 539, at 555 (5th Cir. 1997); Lyles v. U.S. Postal Service, EEOC Appeal No. 01A11110 (May 22, 2002); and Nathan v. U.S. Postal Service, EEOC Appeal No. 01995788 (August 29, 2001). Pretext involves more than a mistake. It means that the reason offered by management is factually baseless, is not the actual motivation for the action, or is insufficient to motivate the action. Tincher v. Wal-Mart Stores, Inc., 118 F. 3d 1125, at 1130 (7th Cir. 1997) and Morgan v. Hilti, Inc., 108 F. 3d 1319, at 1323 (10th Cir. 1997). The complainant always carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." Burdine, 450 U.S. at 254 and Hicks, 509 U.S. at 511.

At all times, the ultimate burden of persuasion remains with the complainant. Board of Trustees of Keene College v. Sweeney, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in St. Mary's Honor Center v. Hicks, *Id.* In Hicks, the Court held that in order to impose liability upon an employer for discriminatory employment practices, an ultimate finding of unlawful discrimination is required regardless of whether or not the employer's explanation for its action was believable. See also Brewer v. Postmaster General, EEOC Appeal No. 01941786 (June 21, 1994) and Montoya v. Department of Housing and Urban Development, EEOC Appeal No. 01940999 (August 4, 1994).

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 4

## Similarly Situated Employees

One of the key elements of a *prima facie* case of disparate treatment based on an adverse employment action is proof that similarly situated comparison employees not in the complainant's protected class were treated more favorably. This is so, in part, because agencies are not monolithic entities. <u>Turner v. Department of the Navy</u>, EEOC Request No. 05900445 (September 25, 1990). In general, in the absence of direct evidence of discrimination, if the complainant cannot identify any similarly situated comparison employees who were treated more favorably, he or she will not prevail. <u>Aguilar v. U.S. Postal Service</u>, EEOC Appeal No. 01944167 (August 8, 1995). In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, a complainant must show that all of the relevant aspects of his or her employment situation are virtually identical to those of the other employees who he or she alleges were treated more favorably. <u>Smith v. Monsanto Chemical Company</u>, 770 F. 2d 719, at 723 (8th Cir. 1985); <u>Murray v. Thistledown Racing Club, Inc.</u>, 770 F. 2d 63, at 68 (6th Cir. 1985); <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F. 2d 1181, at 1185 (11th Cir. 1984); <u>Mazzella v. RCA Global Communications, Inc.</u>, 642 F. Supp. 1531, at 1547 (S.D. N.Y. 1986), *aff'd.* 814 F. 2d 653 (2nd Cir. 1987). The Equal Employment Opportunity Commission has on numerous occasions ruled in similar fashion. See, for example, <u>Tolar v. U.S. Postal Service</u>, EEOC Appeal No. 01965083 (December 16, 1998), citing <u>O'Neal v. U.S. Postal Service</u>, EEOC Request No. 05910490 (July 23, 1991); and <u>Knapp-Huffman v. Attorney General (Bureau of Prisons)</u>, EEOC Appeal No. 01991026 (January 16, 2002). If employees have different supervisors, perform different job functions, were subject to different job standards, engaged in different conduct, or worked during different time periods, they are not similarly situated. <u>O'Neal</u>, *Id.*; <u>Allen v. Department of the Navy</u>, EEOC Appeal No. 05900539 (June 15, 1990); <u>Willis v. Department of the Treasury</u>, EEOC Appeal No. 01A51459 (March 16, 2003); and <u>Stewart v. Department of Defense</u>, EEOC Appeal No. 01A02890 (June 27, 2001).

## Harassment

Harassment of an employee that would not occur but for the employee's race, color, sex, national origin, age, disability, or religion is unlawful if it is sufficiently severe or pervasive. <u>Wibstad v. U. S. Postal Service</u>, EEOC Appeal No. 01972699 (August 14, 1998), citing <u>McKinney v. Dole</u>, 765 F. 2d 1129, at 1138-1139 (D.C. Cir. 1985), and <u>Long v. Attorney General</u>, EEOC Appeal No. 01984213 (July 10, 2001). See also <u>Hubbert v. Department of the Army</u>, EEOC Request No. 05910133 (March 19, 1991); <u>Ortega v. Postmaster General</u>, EEOC Appeal No. 01995243 (May 3, 2001); <u>Humphrey v. U.S. Postal Service</u>, EEOC Appeal No. 01965238 (October 16, 1998). Harassment due to an individual's prior EEO activity is also actionable. <u>Roberts v. Department of Transportation</u>,

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 5

EEOC Appeal No. 01970729 (September 15, 2000). The Supreme Court has held that an employer who creates or tolerates a work environment which is permeated with "discriminatory intimidation, ridicule, and insult" that is sufficiently severe or pervasive to alter the terms and conditions of an individual's employment and which creates an abusive work environment is in violation of Title VII. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), citing Meritor Savings Bank F.S.B. v. Vinson, 477 U.S. 57 (1986). The conduct in question is evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred, including the severity and frequency of the conduct and its effect on the employee's work performance. Harris, Id. In order to support a finding of a hostile work environment, more than a few isolated incidents of enmity based on race, gender, national origin, religion, etc. must have occurred. Johnson v. Bunny Bread Co., 646 F. 2d 1250, at 1257 (8th Cir. 1981) and Cariddi v. Kansas City Chiefs Football Club, Inc., 568 F. 2d 87, at 88 (8th Cir. 1977. There must have been a steady barrage of opprobrious comments and not a casual comment or accidental or sporadic conversation in order to trigger an entitlement to relief. Snell v. Suffolk County, 782 F. 2d 1094 (2nd Cir. 1986).

The Equal Employment Opportunity Commission has repeatedly held that remarks unaccompanied by a concrete agency action are not a direct or personal deprivation sufficient to render an individual aggrieved. Johnson v. Department of Justice, EEOC Appeal No. 01986199 (February 18, 2000); Backo v. U. S. Postal Service, EEOC Request No. 05960227 (June 10, 1986); and Henry v. U. S. Postal Service, EEOC Request No. 05940695 (February 9, 1995). The Commission has also agreed with the courts and held that in order to establish a case of harassment that constitutes a hostile work environment, the harassment must be ongoing and continuous and that a few isolated incidents will not be sufficient to constitute discriminatory harassment. McGivern v. U. S. Postal Service, EEOC Request No. 05930481 (March 17, 1994) and Vargas v. Department of Justice, EEOC Request No. 05931047 (October 7, 1993). The conduct involved must be viewed in the context of the totality of the circumstances including, among other things, the nature and frequency of the offensive encounters and the time span over which the encounters occurred. Rabidue v. Osceola Refining Company, 805 F. 2d 611, at 620 (6th Cir. 1988) and Gilbert v. City of Little Rock, 722 F. 2d 1390, at 1394 (8th Cir. 1993). The decisions make it clear that the anti-discrimination laws are not a "general civility code" and that the conduct complained of must be so objectively offensive as to alter the terms and conditions of one's employment. Routine work assignments, instructions, and admonishments do not rise to the level of discriminatory harassment. DiFruscio v. Social Security Administration, EEOC Appeal No. 01982006 (September 13, 2000).

Cynthia L. Bennett
1J-620-0008-07
Page 6

## Sexual Harassment

There are two recognized categories of sexual harassment claims; vicarious liability, previously referred to as *quid pro quo*, and hostile environment. In order to establish a *prima facie* case of sexual harassment, complainants must prove that they belong to a protected group, that they were subjected to unwelcome harassment, that the harassment was based on sex, and that the harassment affected a term, condition, or privilege of their employment and/or had the purpose or effect of unreasonably interfering with their work environment and/or creating a hostile, intimidating, or offensive work environment. Roberts v. Department of Transportation, EEOC Appeal No. 01970727 (September 15, 2000); Trammel v. Postmaster General, EEOC Appeal No. 01871154 (May 10, 1988); Henson v. City of Dundee, 682 F. 2d 897 (11th Cir. 1982) and Katz v. Dole, 709 F. 2d 251 (4th Cir. 1983). An agency may generally avoid liability by showing that the acts complained of did not occur, that the conduct complained of was not unwelcome, that the alleged harassment was not "sufficiently severe or pervasive" to alter the terms or conditions of the complainant's employment or to create a hostile work environment, that immediate and appropriate corrective action was taken as soon as the employer was put on notice, or that there is no basis for imputing liability to the employer under agency principles. Crane v. Postmaster General, EEOC Appeal No. 01924585 (April 22, 1993) and Meritor Savings Bank F.S.B. v. Vinson, 477 U.S. 57 (1986).

A complainant may establish a claim of tangible employment action sexual harassment by proving that he or she belongs to a protected group, was subjected to unwelcome sexual advances or requests for sexual favors, the advances or requests were based on the complainant's sex, and that submission to or rejection of the advances or requests was a basis for a tangible employment action. Baker v. Postmaster General, EEOC Request No. 05890178 (August 10, 1989). A tangible employment action constitutes a significant change in the complainant's employment status, such as hiring, firing, promotion/demotion, an undesirable reassignment, or a reduction in compensation. Winston v. Department of Health and Human Services, EEOC Appeal No. 01985752 (December 12, 2000); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998); and Enforcement Guidance: Vicarious Liability for Unlawful Harassment by Supervisors, Notice No. 915.002 (June 18, 1999). Everyday events and routine work assignments, instructions, and admonishments would generally not constitute tangible employment actions. DiFruscia v. Social Security Administration, EEOC Appeal No. 01982006 (September 13, 2000); Wolf v. U.S. Postal Service, EEOC Appeal No. 01961559 (July 23, 1998); and Bennett v. Department of the Navy, EEOC Request No. 05980746 (September 19, 2000). If the alleged harasser is a supervisor and a tangible employment action is involved, the agency will be strictly liable. Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 808; and

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 7

Enforcement Guidance, *supra,* Page 7. An acting supervisor is a supervisor for the purposes of this test. <u>Rhodes v. Postmaster General</u>, EEOC Appeal No. 01980284 (September 2, 1999).

A complainant may also establish a violation of Title VII by demonstrating that because of his or her sex, he or she was subjected to conduct so severe and pervasive and objectively offensive that it constituted a hostile work environment and altered the conditions of his or her employment, from the perspective of a reasonable person in the same position. <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, at 81 (1998); <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, at 21-22 (1993); <u>Meritor,</u> 477 U.S. at 67; <u>Cobb v. Department of the Treasury</u>, EEOC Request No. 05970077 (March 13, 1997); and Enforcement Guidance, *supra,* Page 2. The conduct involved is viewed under a "reasonable person" standard (<u>Frink v. Postmaster General</u>, EEOC Request No. 05920272 (August 13, 1992)) and must be ongoing and continuous, with a few isolated incidents insufficient to constitute discriminatory harassment. <u>McGivern v. U.S. Postal Service</u>, EEOC Request No. 05930481 (March 17, 1994) and <u>Vargas v. Department of Defense</u>, EEOC Request No. 05931047 (October 7, 1993). The nature of the conduct, the frequency with which it occurred, and the period of time over which the unwelcome conduct occurred are all relevant to whether or not a hostile work environment exists. Enforcement Guidance, *supra.*

When harassment does not result in a tangible employment action and a supervisor is accused of the harassing conduct, the agency can raise an affirmative defense to liability by demonstrating that it exercised reasonable care to prevent and correct promptly any harassing behavior and that the employee unreasonably failed either to take advantage of any preventive or corrective opportunities provided by the agency or to avoid harm otherwise. <u>Ellerth</u>, 524 U.S. at 765; <u>Faragher</u>, 524 U.S. 775, at 807 (1998); and Enforcement Guidance, *supra*, Page 12. The corrective action necessary will depend upon the facts of the case and must be prompt and reasonably calculated to end the harassment. <u>Taylor v. Department of the Air Force</u>, EEOC Request No. 05920194 (July 8, 1992) and <u>Olsen v. Department of Housing and Urban Development</u>, EEOC Request No. 05930413 (June 16, 1994). If the actions taken by a supervisor culminate in a tangible employment action, this affirmative defense is not available. <u>Ellerth</u>, 524 U.S. at 765; <u>Faragher,</u> 524 U.S. at 808; and Enforcement Guidance, *supra*, Page 7. If a coworker of the complainant is involved, the agency will be liable if it knew or should have known about the problem and failed to take prompt and effective corrective action. <u>Lutticken v. Department of Health and Human Services</u>, EEOC Request No. 05900386 (April 27, 1990) and 29 C.F.R. 1604.11(d).

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 8

## PROCEDURAL AND FACTUAL BACKGROUND

At all times relevant to the issue(s) in this complaint, you were employed as a Maintenance Mechanic at the Chicago Metro Surface Hub in Elk Grove Village, Illinois.   You have alleged that your Maintenance Supervisor Russell Ricard (African American, male), Maintenance Manager Surjit Grewal (brown, male), Plant Manager Melvin Anderson (black, male), and Electronic Technician Douglas Rattin (white, male) intentionally discriminated against you because of your color (White) and sex (Female) in that ongoing since January 4, 2007, you have been subjected to hostile work environment harassment, including but not limited to: not provided assistance in the performance of your duties; subjected to improper behavior from male co-workers; subjected to disparaging remarks and comments; your request for a Preferred Duty Assignment on Tour 2 has not been granted; on March 22, 2007, your request for tools and a toolbox was again denied; and in June 2007, your supervisor accused you of stealing tools.

The record evidence indicates that you have been in your position as a Maintenance Mechanic at the Chicago Metro Surface Hub since January 2007 (Investigative File [IF], Exhibit 1, Page [p.] 1).  Mr. Russell Ricard has been your supervisor for approximately 6 months, Mr. Gil Nuccio has been your manager for approximately 6 months, and Mr. Surjit Grewal has been your manager for approximately 2 years (IF, Affidavit A, p. 5).

The record contains a letter from Ms. Karen Redmon from Human Resources, dated January 5, 2007 and indicating that you qualified on the Promotion Eligibility Register for Maintenance Mechanic, PS 06.  The letter indicates that you chose a vacancy from Tour 3, 1500-2330, NIS SAT/FRI, Pay Location 330, Job #8611190 with required training of IES (IF, Exhibit 2, p. 1).  You were detailed into the position, pending a promotion, effective January 6, 2007 (IF, Exhibit 2, p. 2).

A Preferred Duty Assignment selection form, dated January 24, 2007, indicates that soon after your detail assignment into the Maintenance Mechanic position, you requested a preferred assignment which would have moved you to Tour 2 with work hours from 7:00 am until 3:30 pm (IF, Exhibit 8, p. 1).

An email sent by you to Mr. Surjit dated March 26, 2007, indicates that you had a meeting with management officials on March 6, 2007, and that you felt that the way you were treated had improved "because I am a female" (IF, Exhibit 4, p. 1).

Another email dated May 5, 2007, indicates that you requested information regarding APPS classes and you were informed that all APPS classes had been cancelled until September of 2008 (IF, Exhibit 16, p. 1).  The record further shows that on July 17, 2007, you sent an email to management officials

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 9

questioning them as to whether you were going to attend an APPS class "this year", after you had already been informed that the classes had been cancelled until September of 2008 (IF, Exhibit 18, p. 1).

The record shows that during the week of August 20, 2007, through August 24, 2007, you were scheduled for 40 hours of training in the AU1 "MTSC" class (IF, Exhibit 20, p. 2). In June of 2007, you also received RCS Field Maintenance Training (IF, Exhibit 20, p. 1).

Record evidence further indicates that on December 21, 2006, a requisition for new tools and a tool box for you were approved (IF, Exhibit 14, p. 4). However, when you attempted to submit the requisition through "ebuy" to purchase the tools, your request was disallowed because you had no clearly defined reason for the requisition (IF, Exhibit 14, Pages [pp.] 1-2). Management took steps on your behalf to correct the situation and you were eventually awarded the tools (IF, Exhibit 14, p. 2, Affidavit B, p. 5).

## COMPLAINANT'S *PRIMA FACIE* CASE

### Harassment Claim (Color, Sex)

In a harassment claim, in order to establish a *prima facie* case of harassment, a complainant must show (1) membership in a protected group (2) he/she was subjected to severe or pervasive harassing conduct, such that it alters the conditions of her employment (3) the conduct would not have occurred except for his/her membership in that protected group (4) the conduct was so severe and pervasive so as to alter the conditions or his/her employment. The harasser's conduct should be evaluated from the objective viewpoint of a reasonable person in the victim's circumstances. Enforcement Guidance on Harris v. Forklift Systems Inc., EEOC Notice No. 915.002 (March 8, 1994); Rolf v. United States Postal Service, EEOC Appeal No. 01A14827 (September 24, 2002).

Whether the conduct is sufficiently severe or pervasive is evaluated with a two-prong test with both an objective and a subjective element:

1)     The conduct must be sufficiently severe or pervasive that a reasonable person viewing the conduct from the victim's perspective would find it hostile, offensive or abusive; and

2)     The conduct must have been viewed in that fashion by the complainant at the time it occurred.

See EEOC Policy Guidance on Current Issues of Sexual Harassment (October 25, 1988), ("Commission Policy Guidance") p. 13.

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 10

If the conduct at issue would not substantially affect the work environment of a reasonable person, no violation should be found.

Prong (1) is established as the record confirms you have identified your color as White and your sex as Female (IF, Exhibit 2, p. 1, Affidavit A, p. 1).

Prong (2) requires you to establish that the alleged unwelcome events actually occurred. You have first claimed that you were not provided assistance in the performance of your duties (IF, Affidavit A, pp. 7-8). However, there is no record evidence to support your assertion. In fact, your own testimony indicates that you were provided assistance in the performance of your duties by employees Frank Corsello and Jerry Lucas (IF, Affidavit A, p. 7). The only time you have been assigned to work alone is when you work the "Robots", which is a one person job (IF, Affidavit B, pp. 3-4). You have also been assigned to "unjam the jams" in the APPS machine by yourself, but management does this only when they are short-handed (IF, Affidavit B, p. 4). In the past, you have been allowed to disassemble a Flat Sorter machine and you have worked on this task alone when the Tour 2 crew leaves (IF, Affidavit B, p. 4). This work was not assigned to you however management allowed you to perform the work so that you could familiarize yourself with the Flat Sorter (IF, Affidavit B, p. 4).

Your second claim was that you were subject to improper behavior and comments from a male co-worker, Mr. Douglas Rattin (IF, Affidavit A, pp. 7-8). Specifically, you claim that Mr. Rattin commented that he would "make you cry" and that this was a "man's world" (IF, Affidavit A, pp. 7-8). However, record evidence indicates that Mr. Rattin denied making the alleged comments and you have not provided any objective witness testimony to corroborate your allegation (IF, Affidavit F, p. 2). None of the affiants who provided testimony indicated that they were privy to any such comments by Mr. Rattin (IF, Affidavit G, p. 2). The allegations of inappropriate comments by Mr. Rattin were investigated by management and the result was that the allegations were unsubstantiated (IF, Affidavit B, p. 6, Exhibit 5, pp. 1-3).

The evidence confirms that you requested a Preferred Duty Assignment to Tour 2 on January 24, 2007 (IF, Exhibit 8, p. 1, Affidavit A, p. 6). However, the request was not granted because the agency had already hired another employee for the open position on Tour 2 and therefore your services were retained on the Tour that you originally requested (Tour 3). You do not have a right to receive a particular preferred duty assignment request and if work is unavailable on the specific tour you requested, then your request will not be granted (IF, Affidavit C, p. 3). Ms. Judy Rogers (African-American/Female) was promoted to this position 8-9 months prior to your promotion and she had more seniority on the promotions list than you (IF, Affidavit C, p. 3).

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 11

You claim that your request for tools and a toolbox was denied (IF, Affidavit A, p. 8). However, record evidence clearly indicates that you received the new tools and tool box you requested and that your requisition was never denied by the alleged discriminatory officials (IF, Affidavit A, p. 8, Exhibit 14, p. 4). You admitted to receiving the tools and toolbox requested and therefore this issue is moot (IF, Affidavit A, p. 8).

You were not accused of stealing tools, as claimed in your affidavit (IF, Affidavit A, p. 9). The staff in the maintenance parts cage reported to management that a file cabinet was missing. Mr. Ricard determined that you were in possession of the file cabinet and asked who had given you permission to move it (IF, Affidavit B, p. 4). He informed you not to remove the cabinet from the parts room and that if you needed a cabinet in the future, to ask him (IF, Affidavit B, p. 4). Mr. Rattin was present during the conversation and he confirmed that you were never accused of stealing tools (IF, Affidavit F, p. 3).

Therefore, you have not established prong (2) of the analysis.

In prong (3), you must establish that the alleged discrimination occurred because of your membership in the protected classes. Had the events described above occurred in the manner described in your affidavit, there is still no indication that your sex or color was the reason for their occurrence (except for the alleged comments made by Mr. Rattin). The fact that your preferred duty request was not granted is obviously not connected to your sex because another female employee, Judy Rogers (African-American/Female), was given the Tour 2 position (IF, Affidavit C, p. 3). You have not provided any supporting documentation to substantiate your claims that you were not provided assistance when performing your job duties and record evidence flatly contradicts your claims that you were accused of stealing tools, denied new tools and a toolbox, and that you were subjected to unwelcome comments/behavior by co-workers. You have simply failed to explain how any of these events were connected to your membership in the protected groups. Prong (3) has not been established.

In prong (4), you must establish that management's actions created a hostile or intimidating work environment or altered the terms and conditions of your employment with the agency. In this case, you have not provided the requisite showing. There has been no discipline issued to you as a result of the alleged events and none of your rights as an employee of the agency have been affected. With regard to your claims of not being provided assistance, being denied your preferred duty assignment request, being accused of stealing tools, and not being provided with new tools and a tool box, the record evidence suggests that you are unreasonably interpreting routine job situations as hostile. From a reasonable person's prospective, neither of these events singularly rose

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 12

to the level of harassment, nor were they part of a pattern of severe or pervasive behavior on the part of management officials. With regard to your claim of being subjected to unwelcome comments, management investigated your claims immediately and determined that they were unfounded (IF, Affidavit F, p. 2). From a subjective standpoint, the incident in which you were allegedly subjected to sexist comments from Mr. Rattlin was, at the most, an isolated incident which was not part of a pattern of pervasive behavior. You have not established that Mr. Rattlin or any other management officials have participated in similar behavior in the past. You met with management officials soon after the alleged events however they claim that you never mentioned that you felt harassed because of your color or race, but that you felt you were given more difficult work assignments than male employees (IF, Affidavit C, p. 4, Affidavit B, p. 3). Moreover, the record evidence casts doubt on your allegation that the comments were ever made (IF, Affidavit F, p. 2). Mr. Rattlin has given you encouragement by "teaching you things" and he even helped you file your grievance over the preferred assignment issue (IF, Affidavit F, p. 2). This evidence supports his contention that he never made the alleged comments and indicates that his demeanor was not hostile or intimidating toward you. You have provided insufficient evidence to establish prong (4) of the analysis.

Therefore, you have failed to establish a *prima facie* case of harassment discrimination. However, the Commission has held that allegations of harassing conduct that involve discrete acts that independently state claims outside of a harassment framework are properly reviewed in the context of disparate treatment. Conlin v. Department of Veterans Affairs, EEOC Appeal No. 0120055310 (December 5, 2006). Therefore, several of your allegations will be individually examined under the disparate treatment analysis.

*You were not provided assistance in the performance of your duties*

## Disparate Treatment (Color, Sex)

The record evidence indicates that you have articulated your color as White and your sex as Female (IF, Affidavit A, p. 1). Therefore, prong (1) of the analysis has been established.

Prong (2) requires you to establish that you were subjected to an adverse employment action. In this case, you have failed to establish this prong. Your own record testimony indicates that you were aided by several employees when working on the Automated Package Processing System Machine (IF, Affidavit A, p. 7). The record evidence also clearly establishes that management provided you with ample assignments so that you could learn new things and you were constantly placed in more challenging assignments than your peers with the same job duties because management believed you had a higher skill level and

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 13

aptitude for the position (IF, Affidavit B, p. 5). Management also provided you with ample opportunities for training and job performance improvement (IF, Affidavit C, pp. 3-4, Exhibit 20, pp. 1-2). By all accounts, management felt that you were eager to learn new things and that you aggressively pursued opportunities to learn more about postal service operations (IF, Affidavit B, p. 5 Affidavit D, p. 3, Affidavit F, p. 5). Therefore, you have not established that you were subjected to an adverse employment action. Prong (2) has not been established.

To establish prong (3) of the analysis, you must identify similarly situated employees who are outside of your protected group, and who you believe were treated more favorably. To do this, you must show that all of the relevant aspects of your employment situation are virtually identical to those of the employees whom you alleged were treated more favorably.

You have identified Michael Carr (African-American/Male) as an employee who was treated more favorably than you. You have claimed that employee Carr was treated more favorably because he receives help from his fellow employees while you do not (IF, Counselor's Report, p. 12). Even if this allegation is true, you have not established how employee Carr was treated more favorably *by management officials*. The fact that some employees may help Mr. Carr with his job duties, yet they choose not to help you with similar duties does not indicate any preferential treatment on the part of management officials. Moreover, the evidence shows that that you were only given solo assignments when the job called for one employee or the facility was short-handed (IF, Affidavit B, pp. 3-4). You have failed to establish prong (3) of the analysis.

You have not established a *prima facie* case of disparate treatment discrimination.

*You were subjected to improper behavior and disparaging remarks from male co-workers*

## Disparate Treatment (Color, Sex)

The record evidence indicates that you have articulated your color as White and your sex as Female (IF, Affidavit A, p. 1). Therefore, prong (1) of the analysis has been established.

However, you have failed to establish that the alleged comments made by Mr. Rattin actually occurred. As explained above, you have provided no objective evidence to establish your allegations. Your own affidavit testimony is self-serving and does not meet the requisite burden for establishing this prong.

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 14

You have failed to identify any comparison employees for this accepted issue. As such, you cannot establish prong (3) of this analysis.

You have again failed to establish a *prima facie* case of disparate treatment discrimination.

*Your request for a Preferred Duty Assignment on Tour 2 has not been granted*

## Disparate Treatment (Color, Sex)

The record evidence indicates that you have articulated your color as White and your sex as Female (IF, Affidavit A, p. 1). Therefore, prong (1) of the analysis has been established.

The record establishes that you requested a Preferred Duty Assignment for a different tour, yet the assignment was not granted (IF, Exhibit 8, p. 1, Affidavit C, p. 3). As such, prong (2) has been established.

You have identified employee Judy Rogers (African-American/Female) as a comparison employee for this accepted issue. Specifically, you have indicated that employee Judy Rogers was given first choice of what tour she wanted to work when promoted while you were not (IF, Counselor's Report, p. 12). However, the record evidence shows that she was not similarly situated to you because she was promoted 8-9 months prior to you and she was more senior to you on the promotions register (IF, Affidavit C, p. 3, Exhibit 11, p. 2). Moreover, Ms. Rogers was a Laborer Custodian prior to her promotion and therefore she had a different job and job tasks than you (IF, Exhibit 13, p. 3). Therefore, prong (3) has not been established.

You have again failed to establish the *prima facie* case of disparate treatment discrimination.

*On March 22, 2007, your request for tools and a toolbox was again denied*

## Disparate Treatment (Color, Sex)

The record evidence indicates that you have articulated your color as White and your sex as Female (IF, Affidavit A, p. 1). Therefore, prong (1) of the analysis has been established.

The record clearly indicates that you bypassed Mr. Ricard when you made your request for new tools and a toolbox, however; the evidence suggests that you provided insufficient information regarding your requisition when submitting it through the "ebuy" system (IF, Exhibit 14, p. 2, Affidavit B, p. 5). Your request

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 15

was eventually granted and therefore this issue has subsequently become moot. Prong (2) has not been established.

You have failed to identify any comparison employees for this accepted issue. As such, you cannot establish prong (3) of this analysis.

You have again failed to establish a *prima facie* case of disparate treatment discrimination.

*In June 2007, your supervisor accused you of stealing tools*

## Disparate Treatment (Color, Sex)

The record evidence indicates that you have articulated your color as White and your sex as Female (IF, Affidavit A, p. 1). Therefore, prong (1) of the analysis has been established.

As explained above, you have not established that you were accused of stealing tools. The staff in the maintenance parts cage reported to management that a file cabinet was missing. Mr. Ricard determined that you were in possession of the file cabinet and asked who had given you permission to move it (IF, Affidavit B, p. 4). He informed you not to remove the cabinet from the parts room and that if you needed a cabinet in the future, to ask him (IF, Affidavit B, p. 4). Mr. Rattin was present during the conversation and he confirmed that you were never accused of stealing tools (IF, Affidavit F, p. 3). Prong (2) has not been established.

You have failed to identify any comparison employees for this accepted issue. As such, you cannot establish prong (3) of this analysis.

The *prima facie* case has not been met.

## MANAGEMENT'S LEGITIMATE NON-DISCRIMINATORY REASON

Assuming, *arguendo*, you had established a *prima facie* case for Harassment Discrimination, then the Agency must articulate legitimate, non-discriminatory reasons for its actions.

Supervisor Ricard has testified that the only time you are assigned to a job task alone is when you are on the "Robots" which is a one person job, or when the facility is short-handed (IF, Affidavit B, pp. 3-4). He indicated that if he has assigned you to the APPS machine by yourself, you were not expected to repair it but only to "unjam the jams" (IF, Affidavit B, p. 4). He claimed that most of the time, there are higher level employees working with you when you are assigned

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 16

to the APPS (IF, Affidavit B, p. 4).   He added that you have been helping to take apart a Flat Sorter machine by yourself because you showed initiative and he wanted you become familiar with the inter-workings of the machine (IF, Affidavit B, p. 4).

Manager Grewal has testified that he has no knowledge of any male employees refusing to help you with your job duties (IF, Affidavit C, p. 3). He added that he informed you that you could look up any training opportunities you wanted so that you could understand for yourself what training was available (IF, Affidavit C, p. 4). He stated that he did not refuse your requests for training or testing. He acknowledged that he had scheduled you for the MPE test but you missed it because you were in a different training class in Norman, Oklahoma (IF, Affidavit C, p. 3). He stated that he has no control over when the tests and training classes are scheduled (IF, Affidavit C, p. 3).

Manager Gil Nuccio testified that you casually mentioned to him that other employees are "not nice" or "weren't helpful" to you, but he did not state that you informed him that you felt harassed. He stated that you did complain about the level of your work assignments being more difficult or "higher" than the male employees in your position. He claimed that you are often given more advanced assignments than the other Maintenance Mechanics (IF, Affidavit D, p. 3). He added that you appeared eager to learn and to obtain more training to better yourself (IF, Affidavit D, p. 3). He stated that some of the male employees really admire and respect your abilities while others do not (IF, Affidavit D, p. 6).

Plant Manager Melvin Anderson has testified that he was not aware that you made allegations that your male co-workers would not help you with your job duties (IF, Affidavit E, p. 6).

Electric Technician Doug Rattin has testified that he has not noticed that male employees have refused to help you with your job duties. He claimed that male employees will help you to the same extent that they would help anyone else. He averred that employees like Tony Pena Herrera will not help anyone because he doesn't want to be a teacher (IF, Affidavit F, p. 2). He added that you were not treated less favorably than other Maintenance Mechanics (IF, Affidavit F, p. 2).

With regard to your second allegation, supervisor Ricard stated that he met with you and with Mr. Doug Rattin who was accused of making the comments. He claimed that Mr. Rattin denied making them. After the allegations were made, supervisor Ricard informed everyone that they were to treat you with respect in order to make sure that a similar incident did not happen in the future (IF, Affidavit B, p. 3).

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 17

Manager Grewal has indicated that he has never overheard any comments about it being a "man's world" or about someone wanting to "make you cry" (IF, Affidavit C, p. 3).

Manager Nuccio denied any knowledge of any comments being made prior to the REDRESS Mediation hearing for the current complaint (IF, Affidavit D, p. 3).

Plant Manager Anderson has also testified that he was unaware of any disparaging comments being made toward you (IF, Affidavit E, p. 6).

Electronic Technician Frank Corsello testified that he was unaware of any comments made regarding making you "cry" or about it being a "man's world" (IF, Affidavit G, p. 2).

Mr. Rattin has denied making the alleged comments and has added that he tried to encourage you by teaching you things and he even helped you fill out your grievance forms regarding your preferred duty assignment issue (IF, Affidavit F, p. 2). Mr. Rattin testified that you had a lot of ability and desire to learn and stated that you were very capable. He stated that he has not heard any disparaging remarks about you or your work (IF, Affidavit F, p. 5).

With regard to your Preferred Duty Assignment request, supervisor Ricard has opined that you should have been given the Tour 2 bid job over employee Judy Rogers. He stated that even though Ms. Rogers was on the promotion eligibility roster first, she has not passed any tests in order to qualify for the MM position to which she was promoted. He added that Ms. Rogers recently refused to go to class and he thought it was because she knew she wouldn't pass (IF, Affidavit B, p. 3).

Manager Grewal testified that he did not reject your request for a preferred duty assignment. He acknowledged that it is any maintenance employee's right to submit a preferred duty selection and stated that you may have put in for Tour 2 as a preferred duty assignment, but you did not receive it because it was not available. He claimed that when a duty assignment is available, the Human Resources department will put the most senior person requesting the assignment in it. He added that employee Judy Rogers was not detailed to a Maintenance Mechanic (MM) position, but that she was promoted to this position about 8 or 9 months before you were promoted. Manager Grewal testified that an individual in this position must both pass the test and get promoted. He indicated that Ms. Rogers was put into the position based upon her place on the promotions list and then she was provided with educational opportunities to develop her skills as a qualified mechanic (IF, Affidavit C, p. 3).

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 18

With regard to your being denied new tools and a new tool box, supervisor Ricard has testified that you put in your own request for tools and a brand new tool box without going through him. He stated that he should have been the one to sign off on the request, even though there were plenty of used tools and tool boxes available for you to use (IF, Affidavit B, p. 5).

Manager Grewal averred that he did not reject your request for a new tool box and tools, but that he approved your requisition even though there were already tools and a used tool box that you could have used. He opined that the Finance Department must have waited until money was available to approve the request because you were eventually provided with the new tool box and tools (IF, Affidavit C, p. 3).

Manager Nuccio stated that although you were initially denied a new tool box and tools, you were subsequently provided with the requested items (IF, Affidavit D, p. 3).

Plant Manager Melvin Anderson has testified that he is the approving official for all requests made through the "ebuy" system (IF, Affidavit E, p. 2). He stated that sometimes the requests he receives do not have the name of the employee attached and therefore he will not always know whose request he is evaluating (IF, Affidavit E, pp. 2-3). He stated that he routinely denies requests that are not properly justified (IF, Affidavit E, p. 2). He stated that if your request was denied because no Form 50 had been issued for you in the Maintenance Mechanic position, then the purchase request would have been denied at the Maintenance Manager level and would not have come to him (IF, Affidavit E, p. 3).

Mr. Rattin has added that you have more tools than the rest of the Maintenance Mechanics because you ordered them yourself (IF, Affidavit F, p. 5).

With regard to your being accused of stealing tools, supervisor Ricard has claimed that the staff in the maintenance parts cage asked him what happened to the file cabinet. He stated that he looked around and noticed that it was in your possession. He claimed that he asked you who had given you permission to move the cabinet and you replied that no one was using it and it was empty. Supervisor Ricard averred that he informed you that the cabinet belonged in the parts room and if you needed extra storage that he would provide it for you. He denied that he accused you of stealing tools (IF, Affidavit B, p. 4).

Mr. Rattin testified that he witnessed the alleged events and he confirmed that you had taken a cabinet from the maintenance control office without asking anyone. He stated that supervisor Ricard informed you to return the cabinet and told you to ask him for cabinet space in the future. He claimed that there was no

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 19

talk about stealing any tools and he offered to get you a cabinet after the event was over (IF, Affidavit F, p. 3).

Mr. Rattin added that he did not participate in the rumor that you and he were having an affair but he confirmed that he informed people who were spreading the rumor that it was untrue (IF, Affidavit F, p. 4). He also indicated that he informed you that the rumor was being spread because he wanted you to know that the rumor did not originate with him (IF, Affidavit F, p. 4).

Management cited the Employee and Labor Relations Manual (ELM), version 17.16 dated February 15, 2007, section 665 governing Postal Service Standards of Conduct, Postal Bulletin 22069, the Postal Service Policy on Workplace Harassment, the National Agreement between the United States Postal Service and the American Postal Workers Union, AFL-CIO, 2006-2010, Article 3 governing Management Rights, Article 38 governing the Maintenance Craft, and the relevant sections of the Agency Handbook EL-304, Maintenance Selection System, dated April 1997, as justification for their actions.

## PRETEXT

Having thus articulated the agency's legitimate, facially non-discriminatory explanation, all presumptions of discrimination now drop from the case. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 125 L.Ed. 407, 113 S.Ct. 2742 (1993). The burden shifts to the Complainant to prove by a preponderance of the evidence that the agency's proffered reasons are merely a pretext for discrimination.

Pretext may be demonstrated by showing "such weaknesses, impossibilities, inconsistencies, incoherencies, or contradictions in the agency's proffered reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and then infer that the employer did not act for the asserted non-discriminatory reason." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). A review of the record indicates that you offered nothing more than rank speculations and conclusory allegations. These efforts are insufficient in order to establish pretext. Morgan, supra.

In this case, the evidence is insufficient to establish that your sex or your color was a factor in any of management's actions. You claim that your fellow employees did not offer assistance to you in the performance of your duties. However, this is not indicative in any way of how management officials allegedly discriminated against you. The record clearly establishes that management only gave you solo assignments when the job task called for only one employee (IF, Affidavit B, p. 3). While you may have had issues gaining acceptance amongst the other employees because you are a female mechanic, this does not in any way establish that you

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 20

were treated unfavorably by management officials because of your color or sex (IF, Affidavit G, p. 5).

The alleged comments made by Mr. Rattin have not been established by record evidence. None of the affiants testified that they ever heard any such comments being made by Mr. Rattin or any other employee (IF, Affidavit B, p. 3, Affidavit C, p. 3, Affidavit D, p. 3, Affidavit E, p. 6). Moreover, supervisor Ricard initiated a prompt investigation into your allegations and determined that they were unfounded (IF, Affidavit B, p. 3). Most of the affiants indicated that you were a hard working employee who was eager to learn and wanted to excel at your position (IF, Affidavit F, p. 2, Affidavit B, p. 3, Affidavit D, p. 3). This testimony is in contrast with your allegations that you were subjected to disparaging remarks by your co-workers. Each of the management officials involved had received appropriate training in workplace harassment and therefore they were properly equipped to handle a claim of hostile work environment had it been made (IF, Exhibit 22, p. 2, Exhibit 24, p. 3).

Your Preferred Duty Assignment request was not granted because there was no work on Tour 2 to be performed (IF, Affidavit C, p. 3). That job had previously been given to employee Judy Rogers who was senior to you on the promotions list and who was promoted several months ahead of you.

The evidence clearly establishes that your request for new tools and a tool box was eventually granted (IF, Affidavit C, p. 3). Moreover, you have not established that you were accused of stealing tools. Witness testimony indicates that the conversation was regarding cabinet space and at no time did Mr. Ricard accuse you of stealing (IF, Affidavit F, p. 3). Even had he done so, there is no evidence that it was because of your color or your sex.

You were informed early in 2007 that there would be no more training classes offered until September of 2008 (IF, Exhibit 16, p. 1). This event was in no way connected with your color or your sex and therefore management did not discriminate against you when you were not allowed to attend specific training classes.

You have completely failed to provide sufficient evidence to establish pretext in this case. Management's explanations for their actions are consistent with postal service policy and the national agreement with the APWU, citing management's rights under the collective bargaining agreement (IF, Exhibit 28, pp. 1-4). Therefore, the reasons articulated by management for their actions are deemed legitimate and not a pretext for illegal discrimination.

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 21

## CONCLUSION

After carefully considering the entire record, and applying the legal standards outlined in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973); the evidence does not support a finding that you were subjected to discrimination as alleged. Consequently, your case is now closed with a finding of no discrimination.

## APPEAL TO EEOC

You have the right to appeal the Postal Service's final decision to the Director, Office of Federal Operations, Equal Employment Opportunity Commission (EEOC), P.O. Box 19848, Washington, DC 20036-9848, within 30 calendar days of your receipt of this decision. You must use EEOC Appeal Form 573, a copy of which is enclosed, in connection with your appeal. You may also deliver your appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with your appeal, you must submit proof to the EEOC that a copy of the appeal and any supporting documentation or brief were also submitted to the National EEO Investigative Services Office, NEEOISO – FAD, USPS, P. O. Box 21979, Tampa, FL 33622-1979. You are advised that if you file your appeal beyond the 30-day period set forth in the Commission's regulations, you should provide an explanation as to why your appeal should be accepted despite its untimeliness. If you cannot explain why your untimeliness should be excused in accordance with 29 C.F.R. 1614.604, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Alternatively, if you are dissatisfied with the Postal Service's decision in this case, you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of the Postal Service's final decision, within 90 calendar days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered. If you choose to file a civil action, that action should be styled **Cynthia L. Bennett v. John E. Potter, Postmaster General**. You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge. Your

Final Agency Decision
Cynthia L. Bennett
1J-620-0008-07
Page 22

application must be filed within the same 90-day time period for filing the civil action.

Sally A. Trant                              Date:  March 27, 2008
EEO Services Analyst
NEEOISO
P. O. Box 21979
Tampa, FL 33622-1979

**Enclosure:**  EEOC Appeal Form 573

cc:

<u>Complainant</u>
Cynthia L. Bennett
2432 N. 78th Avenue
Elmwood Park, IL  60707-2405
          **Delivery Confirmation No.  0307 3330 0000 0863 2639**

<u>Representative</u>
John Johnson
Non-Attorney Representative
1208 S. 3rd Ave.
Maywood, IL  60153-2244
          **Delivery Confirmation No.  0307 3330 0000 0863 2646**

District Manager, Human Resources
Chicago District
433 W. Harrison Street, Room 40212A
Chicago, IL 60607-9994

Richard L. Rampage, Esq.
USPS Law Department
222 S. Riverside Plaza, Suite 1200
Chicago, IL 60606-6105

Regional Manager, EEO Compliance and Appeals
Great Lakes Area Office
244 Knollwood Drive, 2nd Floor
Bloomingdale, IL 60117-3010

## NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### OFFICE OF FEDERAL OPERATIONS
P.O. Box 19848
Washington, DC 20036

**Complainant Information: (Please Print or Type)**

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code): | |
| E-mail address (if any): | |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |
| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | ____Yes;  Date Received _____(Remember to attach a copy)<br>____No<br>____This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, <u>another</u> agency, or through any <u>other</u> administrative or collective bargaining procedures? | ____No<br>____Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | ____No<br>____Yes **(Attach a copy of the civil action filed)** |

**NOTICE:** Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative: | |
| Date: | |

**EEOC Form 573 REV 1/01 (page 1 of 1)**

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1. **FORM NUMBER/TITLE/DATE**: EEOC Form 573, Notice of Appeal/Petition, January 2001
2. **AUTHORITY**: 42 U.S.C. § 2000e-16
3. **PRINCIPAL PURPOSE**: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.
4. **ROUTINE USES**: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION**: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

**Send your appeal to:**

**The Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P.O. Box 19848**
**Washington, D.C. 20036**

EEOC Form 573 REV 1/01 (page 2 of 2)