UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CYNTHIA L. BENNETT,

    Plaintiff,

    v.

JOHN E. POTTER, Postmaster General of
the U.S. Postal Service,

    Defendant.

No. 08 C 3587
Judge James B. Zagel

# MEMORANDUM OPINION AND ORDER

## I. STATEMENT OF FACTS

Plaintiff Cynthia Bennett ("Bennett") is a white female employee who has been employed by Defendant United States Postal Service since 1987. In 2006, Bennett was employed as a maintenance support clerk. That October, Bennett's manager, Surjit Grewal ("Grewal"), a male Indian-American, was looking to temporarily fill ("detail") a maintenance mechanic position. Bennett never requested to be detailed into that position because she felt that she was qualified for the permanent position and "did not need to be detailed" in. Grewal offered the position to Judy Rodgers ("Rodgers"), an African-American colleague of Bennett's, who had never passed the qualifying test for the position. Around that same time, Keith Williams ("Williams"), another custodian who had not passed the qualifying test, was also detailed into a maintenance mechanic position. Bennett had passed the qualifications for the job.

In December of 2006, Bennet sought a promotion to the position of maintenance mechanic, and spoke to Gerwal about applying for the position. According to Bennett, she was told not to apply because Rodgers, who was still detailing the position, would be given priority.

Rodgers was assigned to a tour 2 shift. On January 5, 2007, Gerwal promoted Bennett to maintenance mechanic. Her promotion eligibility form notes that Bennett chose a vacancy with a "tour 3" shift assignment. On January 24, Bennett requested a change of schedule from tour 3 to tour 2 - evening shift to day shift. Grewal denied the request, stating that Rodgers was currently in that tour and had priority. In June 2007, Grewal selected Bennett for promotion to mail processing equipment mechanic.

On November 29 and December 20, 2006, Bennett requested a maintenance mechanic's tool set, and her requests were denied because she was not officially working as a maintenance mechanic at that time. Bennett finally received her tool box in April. In the interim, she had to borrow tools to complete her tasks on the job. According to Bennett, Rodgers received a toolbox prior to being detailed into the position.

Bennett claims that while working as Grewal's subordinate, he made several discriminatory comments, including remarks that women shouldn't be working on machines, that in his culture females make everybody else look good, women should do office work, and others were jealous because Bennett was a white female and shouldn't be in her position as a maintenance mechanic. Beginning in 2007, Bennett "had a problem" with co-worker Doug Rattin ("Rattin"). According to Bennett, Rattin wasn't willing to help her on the job but was willing to help male employees, and on several occasions said to her "Have you cried yet? I'm going to make you cry." He also told her that females should not work as mechanics, and on one occasion, while acting as Bennett's temporary supervisor, informed her of a rumor that the two of them were having sex. Bennett further claims that in May 2007 Russell Ricard ("Ricard"), one

of her managers, accused her of stealing tools and that on four separate occasions over a year and a half Ricard treated her differently from her male colleagues when she asked for assistance.

Around August 2007, Bennett reported Rattin's comment about the rumored affair to an investigator and Equal Employment Opportunity ("EEO") specialist. After the investigator spoke to Rattin and Russell, Rattin ceased speaking to Bennett.

In her complaint, Bennett alleges several instances of sex and race discrimination as well as a hostile work environment based on sexual harassment. Defendant now moves for summary judgment and for the following reasons, Defendant's motion is granted.

## II.  STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S.

871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002). I will accept the nonmoving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers*, *Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

## III. DISCUSSION

### A. Sexual Harassment and Hostile Work Environment

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Bennett claims that the Postal Service violated Title VII by subjecting her to a hostile work environment based on sexual harassment. To prevail on this claim, Bennett must establish that "(1) she was subjected to unwelcome sexual harassment; (2) the harassment was based on her sex; (3) the sexual harassment unreasonably interfered with her work performance by creating an intimidating, hostile or offensive work environment that affected seriously the psychological well-being of the plaintiff; and (4) there is a basis for employer liability." *McPherson v. City of Waukegan,* 379 F.3d 430, 437 -438 (7th Cir. 2004). A hostile work environment is one in which the employee is "subjected to conduct so severe or pervasive as to alter the conditions of employment and create an abusive working environment." *Id.* at 438 (citations and quotations omitted). A hostile work environment is one that is offensive

4

when viewed subjectively, as by the victim herself, and objectively, through the eyes of a reasonable person. *Id.* To determine whether Bennett's work environment can be objectively regarded as hostile, I must consider "the frequency and severity of the conduct; whether it was threatening and/or humiliating or merely an offensive utterance; and whether the harassment unreasonably interfered with her work." *Id.*

Although employers are strictly liable for harassment by a supervisor, where there is no tangible employment action, an employer may escape liability subject to what is known as the *Faragher/Ellerth* defense. *Id.* at 439 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. Under the *Faragher/Ellerth* defense, an employer's liability is precluded where the employer "exercised reasonable care to prevent and promptly correct any sexually harassing behavior," and "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer[,]" by failing to report allegedly harassing conduct. *Id.* at 765; *see also McPherson*, 379 F.3d at 441-42.

Defendant makes three arguments in support of its motion for summary judgment: (1) Plaintiff has failed to demonstrate that the alleged harassment was based on sex; (2) the conduct at issue does not create an objectively hostile work environment; and (3) liability is precluded under the *Faragher/Ellerth* defense. Plaintiff maintains (1) she has demonstrated the existence of a genuine issue of fact as to whether or not she was subjected to a hostile work environment;

(2) she was subject to adverse employment actions; and (3) Defendant "did nothing to take care of the unreasonable actions of Rattin, Grewal or Ricard."

Plaintiff complains of several incidents which she claims amount to the creation of an objectively hostile work environment: (1) Grewal told Bennett on several occasions that women shouldn't be working on machines; (2) Grewal told Bennett that in his culture, women "make everybody else look good;" (3) Grewal told Bennett that "people" were jealous of her because she's a white female and they didn't think she should be a maintenance mechanic; (4) on several occasions, Rattin said to Bennett "Have you cried yet? I'm going to make you cry[;]" (5) Rattin told Bennett that females shouldn't be mechanics; (6) while acting as a coworker, Rattin told Bennett that he didn't know why he should help her and said that he would have no problem helping a man; (7) while acting as her supervisor, Rattin told Bennet that there was a rumor that he and Bennett were having an affair; (8) Ricard treated Bennett differently when she needed assistance at work; and (9) Ricard wrongfully accused Bennett of stealing a cabinet and tools.

**1. Harassment Based on Sex**

Defendant first argues that Plaintiff fails to establish that Rattin's comment about the rumor of an affair arose from gender-related animus. Plaintiff counters that "the discriminatory nature of the charged conduct speaks for itself," and that she need not show that it was gender based. In support of this contention, Plaintiff cites *Doe by Doe v. City of Belleville, Il.*, 119 F.3d 563, 576 (7th Cir. 1997), a same-sex harassment case. But *Doe* is not the last word on the issue. In 1998, the Supreme Court vacated the judgment in *Doe*, and remanded the case to the Seventh Circuit for further consideration in light of the subsequent *Oncale v. Sundowner Offshore Services*, 523 U.S. 75 (1998). In *Oncale*, the Supreme Court held that a same-sex harassment

6

plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[ion]* . . . because of . . .sex.'" *Id* at 81 (emphasis in original). Pursuant to *Onacle*, Plaintiff must show that the conduct complained of was based on her gender.

Several of the complained-of comments support a reasonable inference that they were based on Bennett's sex, such as comments about women working on machines and women making other look good, as well as willingness to help a man over Bennett. For this reason, summary judgment cannot be granted on this prong.

**2. Objectively Hostile Work Environment**

To determine whether Bennett's work environment can be objectively regarded as hostile, I must consider "the frequency and severity of the conduct; whether it was threatening and/or humiliating or merely an offensive utterance; and whether the harassment unreasonably interfered with her work." *McPherson,* 379 F.3d at 438. There is little evidence that Bennett's work environment was objectively hostile. First, the conduct at issue is not particularly severe. Three of the complained-of comments were reports of other conduct (what goes on in another culture and rumors being spread). Furthermore, in her deposition Plaintiff stated that the cultural comment was made in connection with Grewal's decision to keep Bennett in the office. Bennett admitted that this was because she did the job well by keeping things clean and organized and she got along with everybody - "[b]ecause [she] was a good employee."

Neither was the conduct particularly frequent. Bennett testified that Grewal told her on numerous occasions over three years that women should not be working on machines, and that Ricard treated her differently than her male counterparts when she needed help on four occasions

7

over a year and a half. Two of the comments - the rumored affair and the jealous coworkers - were isolated incidents, as was the alleged accusation of stealing. The only allegedly threatening comment was one by Rattin that he would make Bennett cry.

Less severe acts of harassment "must be frequent or part of a pervasive pattern of objectionable behavior in order to rise to an actionable level[.]" *Smith v. Sheahan*, 189 F.3d 529, 534 (7th Cir. 1999). In *Patt v. Family Health Systems, Inc.*, 280 F.3d 749, 754 (7th Cir. 2002), the court found that eight gender-related comments made by the alleged harasser over several years were "too isolated and sporadic to constitute severe or pervasive harassment," even where one comment was: "the only valuable thing to a woman is that she has breasts and a vagina." In *Adusumilli v. City of Chi.*, 164 F.3d 353, 361-62 (7th Cir. 1998), the plaintiff complained of comments about how she ate her banana and people thinking she was a prostitute, coworkers staring at her breasts, and the unwanted touching of her buttocks on one occasion. The Court found that this was a case of "simple teasing" in which the incidents were too isolated and the comments too offhand to amount to "discriminatory changes in the terms and conditions of employment." *Id.* at 361 (quoting *Faragher*, 524 U.S. at 788). Similarly, in *McPherson*, 379 F.3d at 439, inquiries as to the color of the plaintiff's bra, a suggestive tone when he asked her if he could "make a house call" when she called in sick, and the pulling of her tank top to look inside her shirt "were lamentably inappropriate," but not enough to establish a hostile work environment.

These cases are instructive here. The alleged comments and conduct that can be inferred to be based on gender, even when taken together, are not nearly as severe as some of the behavior that has been found to be insufficient to create a hostile work environment. Furthermore, despite

the alleged comments made by Grewal, it was he who promoted both Bennett, on two occasions, and her female colleague Judith Rogers. There is little evidence to support Bennett's claim that Grewal was acting in a discriminatory manor based on Bennett's gender. Although the remaining gender-based comments by Rattin may be "lamentably inappropriate," they are insufficient to create a hostile work environment. Judges understand why someone would want legal redress against a co-worker or a supervisor who behaves badly, such as Rattin, but Congress has not provided a legal remedy for gross incivility. More than that is required to create a hostile work environment, and even a hostile work environment does not give rise to a claim unless it is motivated by gender or race. Except for the fairly specific provision of federal employment law, there is no legal right to sue your employer because your supervisor is a jerk.

**3. The *Faragher/Ellerth* Defense**

In order to avoid liability for Rattin's actions in his capacity as Bennett's supervisor, Defendant invokes the *Faragher/Ellerth* defense. This defense is properly invoked where the harassment does not result in a tangible employment action. *McPherson,* 379 F.3d at 439 (citing *Faragher*, 524 U.S. 775 and *Ellerth*, 524 U.S. 742). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761 (1998). In this case, no such employment action is alleged. In fact, Plaintiff admits that she was promoted on two occasions.

Under the *Faragher/Ellerth* defense, an employer's liability is precluded where the employer "exercised reasonable care to prevent and promptly correct any sexually harassing behavior," and "the plaintiff employee unreasonably failed to take advantage of any preventive or

corrective opportunities provided by the employer[,]" by failing to report allegedly harassing conduct. *Id.* at 765; *see also McPherson*, 379 F.3d at 441-42. Bennett admits that she reported Rattin's comment about the rumored affair, made while Rattin was acting as her supervisor. Bennett made the report to an investigator and EEO specialist, and after this conversation, Rattin ceased making any comments to Bennett. Plaintiff complains that Rattin was promoted, but this is irrelevant to the defense. Bennett admits that Defendant corrected Rattin's behavior upon receiving the complaint from Bennett, and this is all that is required.

Plaintiff also complains of Ricard and Grewal's treatment of her while they were her supervisor. However, there is little evidence to support Plaintiff's claim that this treatment was gender-based. Even if it was, Bennett points to no evidence that she ever reported it to Defendant, nor does she argue that the preventative and remedial policies implemented by Defendant were somehow inadequate.[1] A reasonable finder of fact would find Defendant's liability precluded under the *Faragher/Ellerth* defense.

## B. Sex and Color Discrimination

Bennett claims that the Postal Service discriminated against her both on the basis of her color and her gender. Bennett may proceed with her claims by either the direct or indirect method of proof. *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 793 (7th Cir. 2005). In order to avert summary judgment using the direct method, Bennett must put forth enough direct or circumstantial evidence "to create a triable issue of whether the adverse employment action of which [s]he complains had a discriminatory motivation[.]" *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997). Under the indirect method, also known as the *McDonnell*

---

[1] In fact, Bennett availed herself of the remedial policies in place, which proved to be effective with regard to Rattin.

*Douglas* burden shifting approach, Bennett must present evidence that (1) she belongs to a protected class; (2) she was subject to an adverse employment action; (3) she was meeting her employer's legitimate employment expectations; and (4) similarly situated employees not belonging to the protected class were treated more favorably. *Ajayi v. Aramark Business Services*, 336 F.3d 520, 531 (7th Cir. 2003). If Plaintiff is able to satisfy these requirements, the burden then shifts to Defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If Defendant does so, the burden then shifts back to Plaintiff to show that the proffered reasons are merely a pretext for the discriminatory behavior. *Id.* Under either method, Plaintiff must show that she was subject to an adverse employment action. *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997). In this Circuit, an "adverse employment action" is defined broadly, and includes actions such as firing, demotion, reduction of benefits or pay, downward shift in skill level required to perform a job. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Adverse employment action is not limited to actions which result in readily quantifiable losses, but "not everything that makes an employee unhappy is an actionable adverse action." *Id.* Plaintiff claims that she can defeat summary judgment via either route, however, her failure to show that she suffered an adverse employment action dooms her claims.

In arguing that she was subject to adverse employment actions, Plaintiff first maintains that she had requested to fill the position of maintenance mechanic "because employees had been detailed (temporary position) into a mechanic position for which they had not passed a qualifying school and/or text." In November 2006, she asked Grewal to be placed in an open position, rather than detailed into one. Second, she claims that Ricard discriminated against her by treating her differently than her male counterparts when she needed assistance. Third, she asserts

11

that Rodgers was given preference over her for a shift assignment. Fourth, Plaintiff argues that she was denied a tool box, while Rodgers was given one without following the protocol to obtain a tool box.

As to the first alleged adverse employment action, Bennett basically claims that the delay in being promoted to maintenance mechanic was based on race and gender discrimination. But Bennett never bid on this position, so it is difficult to see how this can be construed as an adverse employment action. The initial denial of a tool box and the isolated instances of allegedly discriminatory behavior by Ricard also do no not amount to adverse employment actions, and Plaintiff points to no case law to support her argument that they do. *Id.* at 441-42 (collecting cases). Finally, Bennett's shift assignment is not an adverse action. *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 729 (7th Cir. 2001); *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004).

Furthermore, Plaintiff demonstrates little support, either directly or indirectly, for the proposition that she was discriminated against with regard to the "delay" in her promotion. Defendant claims that Bennett was first offered the maintenance mechanic detail before Rodgers. However, according to Bennett, she "was qualified for the position and did not need to be detailed into the position." The detail was then offered to Rodgers, a woman, discrediting Plaintiff's claims of sex discrimination. Once the position became available on a permanent basis, Bennett did not bid on it. She claims that she was told not to do so by Grewal, and that this alone demonstrates discrimination. It is difficult to see how his counsel amounts to an adverse employment action, but even if it does, Defendant's proffered reason for this conduct is that Rodgers had successfully performed the job duties of a maintenance mechanic after having been detailed into the position six months prior. Even if Bennett had the requisite qualification,

12

Rodgers had seniority in the position. The fact that the position was awarded to Rodgers discredits Plaintiff's claims of sex discrimination.

Plaintiff does allege that Grewal discriminated against her on the basis of her color, as Williams and Rodgers - the two employees initially detailed into the maintenance mechanic positions - are both African-American. But Bennett testified that she did not request the detail, and she has failed to put forth any evidence that Defendant's proffered reason for awarding the permanent post to Rodgers prior to Bennett is in anyway a pretext for racial discrimination.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

ENTER:

_James B. Zagel_
James B. Zagel
United States District Judge

DATE: November 17, 2009